# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7187 | **DATE** | 12/6/2004 |
| **CASE TITLE** | RAYMOND JOHNSON vs. LEE WATTENBARGER, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
       ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the attached reasons, Defendants' motion for summary judgment (doc. #28) is GRANTED in part. Plaintiff's motion for summary judgment (doc. #30) is DENIED. Status set for December 15, 2004 at 9:30 a.m. to stand.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | DEC 07 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | GK | 52 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| JHC | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice / mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RAYMOND JOHNSON, )
)
    Plaintiff, )
) Nos. 00 C 7187
v. )
) The Honorable William J. Hibbler
LEE AND RUTH WATTENBARGER, )
)
    Defendants. )

DOCKETED
DEC 0 7 2004

MEMORANDUM OPINION AND ORDER

This dispute arises out of a series of contracts for home construction and repair work between Raymond Johnson and Lee and Ruth Wattenbarger. Unfortunately for the parties, the business relationship soured—Johnson claims that the Wattenbargers required changes to the contract, failed to move a utility pole, and delayed in approving work and the Wattenbargers claim that the work was not done or was not done correctly— and the Wattenbargers terminated the contract in May 2000. (Def. Ex. 11). Johnson then sued the Wattenbargers, alleging breach of contract (Count I), breach of oral contract (Count II), tortious interference with business relationships (Count III), tortious interference with contracts (Count IV), intentional infliction of emotional distress (Count V), and loss of profits, wages and income (Count VI). After the Court dismissed Counts III, V, and VI,[1] the parties filed cross-motions for summary judgment. The Wattenbargers seek partial summary judgment, arguing that they are entitled to summary judgment on Counts II and IV. Johnson seeks

---

[1] Johnson reargues his lost wages claim despite the fact that this claim has been dismissed. As the Court noted previously in the motion to dismiss, loss of net profits and wages are items of damage, not independent causes of action. The Court will not revisit the dismissal of Count VI.

1

5 2

summary judgment on his entire claim. For the reasons set forth herein, the Wattenbargers' motion for summary judgment is GRANTED in part and Johnson's motion for summary judgment is DENIED.

In May 1999, Raymond Johnson contracted with Lee and Ruth Wattenbarger to perform remodeling work on their home, consisting primarily of the demolition of the existing garage and the completion of an addition to the Wattenbargers' home and a new garage. (Def. Exs. 1-3). Prior to entering the contract, Johnson and the Wattenbargers negotiated the price to be charged for the work Johnson was to complete. (L. Wattenbarger Dep. at 6). The contract called for the Wattenbargers to pay Johnson $3,000 in advance, $4,500/week for six weeks (the estimated time for completion of the project), and $20,000 upon completion of the project. (Def. Ex. 2). The parties incorporated into the contract blueprints of the Wattenbargers' home with notes detailing the work to be done. (Def. Ex. 1). The parties also created (and signed on the same day as the initial contract) a two-paged typewritten written addendum to the contract that modified some of the notes on the blueprints and adding some guarantees to the contract. (Def. Ex. 3). Among the provisions of the addendum is an agreement that "All payments to contractor, including materials will not exceed agreed amount." (Def. Ex. 3).

It is not entirely clear from the parties submissions what happened next. Suffice it to say, that despite the fact that the work was to begin no later than June 9, 1999 and was estimated to take no more than six weeks (or until July 21, 1999), the work had not yet been completed by September 1999. On September 15, 1999, Johnson called the utility company to inquire about relocating a utility pole, necessary to complete the project. (Pl. Ex. F1). Johnson argues that Defendants were to have made this call, and that their failure to make it is the cause of the delay. (Johnson Dep. at

78). Despite this snafu and the delay it caused, the parties nevertheless entered into a second contract on September 30, 1999. (Def. Ex. 4). The second contract called for Johnson to install new siding on portions of the Wattenbargers' home. (Def. Ex. 4). The Wattenbargers agreed to pay Johnson $6,250 in advance for materials necessary to complete the project, $3,125 after Johnson removed the old siding, wrapped the house, and finished the trim and gutter work, and $3,125 upon satisfactory completion and inspection of the work. (Def. Ex. 4).

By December 1999, Johnson still appeared to be working on the initial project and the parties entered into a third written contract. (Def. Ex. 5). In that contract, Johnson agreed to finish a ten-foot by ten-foot surface of the Wattenbargers' driveway in exchange for $5,120, $2,000 of which would be paid in advance. (Def. Ex. 5). It appears that some time in March 2000, the parties added a hand-written addendum to this third contract, noting that "all payments have been made by owner [the Wattenbargers] . . . and that no liens have been filed against the homeowners now or in the future." (Def. Ex. 5). The handwritten note suggests that the last check issued on March 1, 2000 for $1,289. (Def. Ex. 5).

But by May 2000, the relationship between the parties reached a breaking point. The Wattenbargers blame Johnson for failing to complete work outlined in the May 1999 and September 1999 contracts. (Def. Ex. 11). Johnson blamed the Wattenbargers for delays related to the utility pole (Pl. Ex F1, Johnson Dep. at 78) and for other unnamed "intentional delays" (for which he points to no support in the record). The Wattenbargers terminated the contracts and this lawsuit followed.

Summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265

(1986). All facts and inferences are viewed in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering cross-motions for summary judgment, the Court must construe all inferences in favor of the party against whom the motion under consideration is made. *Allen v. City of Chi.*, 351 F.3d 306, 311 (7th Cir.2003). However, the party opposing summary judgment must go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. And neither "the mere existence of some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, nor the existence of "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), is sufficient to defeat such a motion. Further a party cannot manufacture a conflict by submitting an affidavit that contradicts an earlier deposition. *Piscione v. Ernst & Young, L.L.P.*, 171 F.3d 527, 532 (7th Cir.1999).

The Court turns first to Johnson's motion for summary judgment on Count I, which merits little discussion. Johnson argues that there is no dispute that he completed the work described in the May 1999 and September 1999 contracts. But contrary to Johnson's claims, there clearly is a dispute: Lee Wattenbarger's affidavit describes numerous examples of work that was not completed and Robert Witt testified that Johnson's work was not performed in a workmanlike manner. The Wattenbargers have submitted evidence to demonstrate either that the work was not done or that it was not done correctly, and thus summary judgment in favor of Johnson on Count I is not appropriate and his motion is DENIED.

Next, the Court examines the parties' motion for summary judgment on Count II — Johnson's claim for $33,000 due to the breach of the oral contract with the Wattenbargers to use

their home as a referral. None of the three contracts signed by the parties contains a reference to any referral discount being offered by Johnson to the Wattenbargers. Furthermore, at his deposition, Johnson repeatedly stated that the three contracts contained the parties' entire agreements. (Johnson Dep. at 27, 28, 31). Now, Johnson attempts to manufacture a conflict with his deposition testimony by claiming that the parties did have other agreements besides the three written agreements, one of which was an agreement for Johnson to give the Wattenbargers a discount on the price of the contract in exchange for using their home as an on-going referral. (Johnson Affidavit ¶¶ 1-3). But a party cannot manufacture a conflict with a self-serving affidavit that clearly contradicts prior deposition testimony, and paragraphs one through three of Johnson's affidavit are therefore stricken. *Amadio v. Ford Motor Co.*, 238 F.3d 919, 926 (7th Cir. 2001). Johnson points to no other evidence other than his affidavit to support his claim that the parties had an oral contract for a referral discount.

But even were the Court to accept the evidence Johnson puts forth in his affidavit, the parol evidence rule also bars Johnson's claim that he and the Wattenbargers had a referral agreement. The parol evidence rule generally precludes evidence of understandings not reflected in the contract, reached before or at the time of its execution, which would vary or modify its terms. *W.W. Vincent and Co. v. First Colony Life Ins. Co.*, 351 Ill. App. 3d 752, 757-58, 814 N.E.2d 960, 966 (2004). The threshold question for the parol evidence rule is whether the contract is integrated — in other words, is the contract the final and complete expression of the parties' intent. *Hessler v. Crystal Lake Chrysler-Plymouth, Inc.*, 338 Ill.App.3d 1010, 1019-20, 788 N.E.2d 405, 412-13 (2003). Although none of the written contracts at issue here contain an integration clause, the parties negotiated prior to drafting the contract, have drafted detailed contracts, specifying in detail the price to be paid, the

work to be done, the manner in which the work was to be done, and the time-frame within which the work was to be completed, and have signed these contracts. Given that the parties signed a negotiated instruments that contain the essential terms of their agreement, it is clear that the parties intended the contracts to be the final and complete expressions of their agreement. *Geoquest Productions, Ltd. v. Embassy Home Entertainment*, 229 Ill.App.3d 41, 45, 593 N.E.2d 727, 730 (1992) (written documents that contain the essential terms of an agreement and express the parties' intent to be bound are integrated); *Weber v. DeKalb Corp., Inc.*, 265 Ill.App.3d 512, 518, 637 N.E.2d 694, 699 (1994) (looking to the four corners of the document and the circumstances of the case to determine whether the document was integrated). As noted earlier, none of the three written contracts mention a referral agreement. To the contrary, among the terms of the contract was a clause that states the price to be paid by the Wattenbargers would not exceed $50,000. Johnson's claim of a prior oral agreement to provide a discount in exchange for a referral by the Wattenbargers alters the essential meaning of the contract and therefore evidence of this agreement is barred by the parol evidence rule. Therefore, the Court GRANTS the Wattenbargers' motion for summary judgment on the portion of Count II related to the referral agreement and DENIES Johnson's motion for summary judgment on Count II. Johnson also includes a claim for breach of an oral contract for $6,020 of additional work made *subsequent* to the writing, which is therefore not barred by the parol evidence rule and this portion of Count II survives the summary judgment motions.

Last, the Court examines Count IV of Johnson's complaint. In Count IV, Johnson alleges that the Wattenbargers tortiously interfered with other contracts held by Johnson by intentionally causing delays that resulted in the breach of other contracts that he would have obtained. Under Illinois law, to establish a cause of action for tortious interference with contract, a plaintiff must

6

prove: (1) the existence of a legally enforceable contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's interference and unjustified (i.e. malicious) inducement of a breach; (4) defendant's wrongful conduct caused a subsequent breach by the third party to the contract; and (5) damages to the plaintiff resulting from the breach. *Kehoe v. Saltorelli*, 337 Ill. App. 3d 669, 676-77, 786 N.E. 2d 605, 612 (2003); *Fieldcrest Builders Inc. v. Antonucci*, 311 Ill. App. 3d 597, 611, 724 N.E.2d 49, 61 (1999). Johnson's claim fails because he cannot establish the fourth element of this claim.

The Wattenbargers argue that Johnson cannot even establish that he had contracts with third parties. The Court disagrees. Johnson claims that he had contracts with EMJ Development (Keith Beal) and Lori Dexter to perform construction work at their residences. During his deposition, Johnson testified that he could not reach an agreement with Beal regarding the start date of the work and that the starting date was an integral part of the agreement. (Johnson Dep. at 87-88). But Johnson also testified that he had an oral contract with Beal and Dexter. Although Johnson later contradicted himself, stating that he had "no contract" with Beal and that he had only negotiated towards a contract, his deposition testimony does create a dispute as to whether a contract with Beal did exist. (Johnson Dep. at 82, 88-89). Similarly, Johnson also contradicts himself when pressed about his oral contract with Dexter, stating that Dexter told him he could have the job if he gave her a start date, but that he was unable to do so and so she contracted with someone else. (Johnson Dep. at 93). On summary judgment, Johnson changes his tune yet again. Now he claims that both Beal and Dexter agreed not only to Johnson's estimate regarding the price to be paid for the construction work but also that they agreed to a start date, submitting both Beal's and Dexter's affidavits in support. (Pl. Exs. B1, C1). Although Defendants' argue there is no dispute of material fact as to

7

whether Johnson had contracts with third parties, the facts clearly are in dispute (if only because Johnson sings several different tunes). Johnson testified at his deposition that he had an oral contract with Beal. And Johnson submitted affidavits from both Beal and Dexter evidencing an agreement and understanding. Although the Court finds the evidence submitted by Johnson at summary judgment questionable, particularly given the fact that it wholly contradicts portions of his deposition testimony, it is not the Court's task at summary judgment to weigh evidence or make credibility determinations. *McGreal v. Ostrov*, 368 F.3d 657, 677 (7th Cir. 2004).

However, Johnson cannot establish that the Wattenbargers caused the *third parties* to breach the contracts. Johnson claims that the Wattenbargers intentionally caused delays during the work on their home so that he could not work on Beal's and Dexter's projects. In support, Johnson points to his affidavit, in which he states that the Wattenbargers required him to work solely on their project before working on other projects. (Johnson Aff. ¶ 2c). But nothing in the written contracts between the Wattenbargers and Johnson imposes such a restriction on Johnson, and the parol evidence rule bars any extrinsic evidence of this fact. Johnson points to no other facts to suggest that the Wattenbargers interference induced a breach. But there is more. Johnson, in fact, dooms his own claim. In his affidavit, Johnson states that the delays caused by the Wattenbargers "caused *me* to cancel my contracts with Keith Beal and Lori Dexter." (Johnson Aff. ¶ 13) (emphasis added). In order to establish a claim for tortious interference with contracts, a plaintiff must show that the defendant's conduct caused the *third party* to breach a contract with the plaintiff. *Kehoe*, 786 N.E.2d at 612; *Fieldcrest Builders Inc.*, 724 N.E.2d at 61. Here, Johnson admits that this did not happen because he, and not Beal and Dexter, canceled the contracts. Defendants' Motion for Summary Judgment with regard to Count IV is therefore GRANTED.

8

Plaintiff's Motion for Summary Judgment is DENIED in its entirety. Defendant's Motion for Summary Judgment on Counts II and IV is GRANTED in part as specified herein.

IT IS SO ORDERED.

12/6/04
Dated

The Honorable William J. Hibbler
United States District Court